STOKES
*vs*
PRESCOTT'S ADMINISTRATOR.

*arate acts or duties to the other obligees, they alone may sue thereon at law.*

---

## Stokes *vs* Prescott's Administrator.

ERROR TO THE GRAVES CIRCUIT.

*Appeal to the Circuit Court. Lost instruments. Clock pedlers.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

APPEAL.

*Case* 11.

*Sept.* 19.

THE administrator of James C. Prescott, recovered a judgment against Stokes, before a Justice of the Peace, for forty dollars and interest, on a note executed to Prescott in his lifetime, for that amount, and Stokes appealed to the Circuit Court. Upon affidavits that the note had been lost or purloined from the papers, after the judgment and appeal, the Court heard evidence of its contents, the law and facts having been submitted to the Judge, and this is assigned for error here.

The case stated.

We think the Court acted right in hearing the evidence. The suit was properly instituted upon a note in existance when brought, and the note was lost after it was in the custody of the officers of the law, and its subsequent loss should not work such manifest injustice as to drive the plaintiff, after he had obtained a judgment before the Justice, out of Court, and to compel him to seek his remedy, *de novo*, in another tribunal. In England, the practice is now allowed to sue at law upon a lost bond. And

When a suit has been regularly commenced on a note or bond, and judgment for plaintiff and appeal by defendant to Circuit Court, & the note lost, parol evidence may be heard of its contents and judgment rendered.

though this Court has not deemed it proper to depart from the rule formerly established by this Court, which requir. ed a proceeding in Chancery to set up a lost note or bond, and refused to indulge the prosecution of a suit at law, we feel warranted in departing, so far from it, at least, as to authorize a suit which has been properly commenced, to be sustained, upon proof of the contents, of a note or bond which has been afterwards lost out of, or purloined from the papers of the cause. And the more especially should the suit be indulged, when, as in this case, judg. ment was rendered before the Justice, and the evidence tends to show, that the note was delivered to the defendant with the other papers, by the Justice, to file in the Clerk's office on his appeal, and was withdrawn and secreted by him.

The defendant, Stokes, having alledged and proved that the note was executed for the price of a clock sold to him by Prescott, a transient person and pedler of clocks, contended that the same was sold without license, in violation of the statute of 1831, (2 *Stat. Law*, 1381,) and the contract, by the 9th section thereof, was void. The plaintiff produced and read to the Court a paper, which purports to have been issued by the Clerk of the County Court of Graves county, in which said clock was sold and note executed, as his license for selling. The paper, after reciting that Charles Hudson, William Peck and ten others named, (among whom is James C. Prescott, the decedent,) trading under the firm of Hudson & Peck, had paid into the hands of the Clerk, ten dollars, as a tax in advance on a license for selling clocks, in said county, proceeded thus: "these are, therefore, to *license* and *permit* the said *Hudson & Peck*, to barter or sell any clock or clocks, in said County, for the term of one year from the date hereof," which was signed by the Clerk. The question submitted for our determination is, did the paper produced confer on Prescott the privilege, as a transient person and pedler, to sell the clock in question, or pro-tect his contract for the price from the denunciations of the statute. The 4th section provides "that no *pedler* or transient *person* shall barter or sell any clock or clocks, in any county in this State, until he shall obtain a license

to do so, which license the Clerk of the County Court is hereby authorized to grant, for one year, upon *his* paying in advance, to said Clerk, the sum of ten dollars." And the 9th section provides that all contracts for the sale of clocks, &c. without license, as required in this act, shall be void.

We incline to think that the privilege to peddle in and vend clocks, is a *personal* and *individual* privilege, and was never contemplated by the statute to be conferred on a plurality of persons, whether acting as co-parceners or otherwise, on the payment of the single amount of ten dollars tax. And if the privilege can be granted to partners, that it can be exercised jointly only, or if severally, by one only selling at a time, and cannot be exercised by the partners severally, and in different places in the same county at the same time. Whether the statute was intended to raise revenue or to limit and restrict the practice of peddling in wooden clocks, which had grown into an evil, it could not have contemplated that a dozen or more persons, under pretence of a partnership, should swarm the county in different directions at the same time, under cover of a single license, and the payment of a single tax, peddling in clocks. The statute provides that no pedler or transient *person* shall sell, &c. upon *his* paying in advance, &c. which contemplates a single person and not a plurality of persons. But waiving this intimation, it does not appear, in this case, that Prescott was a partner of the firm of Hudson & Peck, nor that there was any such firm, and if there was, the sale of the clock and reception of the note was not in the name of the firm, but in the individual name of Prescott; and if the license covers and protects him at all, it covers and protects him as a member of a firm, and not as an individual. But though the license recites that he and eleven others paid the tax of ten dollars, the grant of privilege to sell is not made to him nor to them, nor to the assumed firm, but is made to Hudson & Peck only, without styling them a firm, or giving to them the privilege to peddle and sell as a firm, by that name.

*The privilege to sell clocks under a license from the Clerk of a County C't, is an individual and personal privilege, and is not to be conferred on a plurality of persons for one tax of ten dollars.*

Upon the whole, we think that the license relied on was obtained, in an attempt at evasion, and in fraud of the law,

and will not protect the contract in question, at least upon the proof now before us, from the condemnation of the statute.

Judgment reversed and cause remanded, that a new trial may be granted.

*Husbands* for plaintiff: *Herndon* for defendant.